480 So.2d 980 (1985)
Joyce FREEMAN, John H. Freeman and Robert J. Freeman
v.
Floyd Lee VARNADO, Ebasco Construction Co., Fishbach and Moore Construction Co., and Louisiana Power and Light.
No. CA-2366.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 1985.
Rehearings Denied January 27, 1986.
Writ Denied March 21, 1986.
*982 James A. McCann, Lillian Cohen, New Orleans, for appellants.
Geoffrey P. Snodgrass, New Orleans, for third party appellant.
Paul B. Deal, Vincent Paciera, Jr., New Orleans, for intervenor appellant.
John J. Hainkel, Jr., Daniel R. Hynes, New Orleans, for U.S.F. & G.
E.S. Ned Nelson, Mary C. Hartman, Maria I. O'Byrne Stephenson, New Orleans, for McMillion Dozer Services, Inc.
Before GULOTTA, SCHOTT, GARRISON, KLEES and CIACCIO, JJ.
GULOTTA, Judge.
In this suit for wrongful death of a pedestrian-worker struck by a dump truck at a construction site, plaintiff-survivors and an intervening worker's compensation insurer appeal from the trial court's judgment dismissing one defendant on a motion for directed verdict and exonerating the remaining defendants pursuant to jury findings. In a separate appeal, a third party plaintiff seeks review of a separate judgment denying its claim against a co-defendant for attorney's fees and expenses under an indemnification agreement. We reverse.

BACKGROUND
On June 1, 1977, at the construction site of the Waterford 3 nuclear power plant in Taft, Louisiana, John Freeman, an electrician, was struck and killed by a backing dump truck loaded with sand as he attempted to cross a dirt ramp sloping into an excavation area.
Freeman's widow and two surviving sons filed this wrongful death action against the following defendants: Kasib Salah Shabazz, a.k.a. Floyd Lee Varnado (the truck driver); T&J Trucking Service, Inc. ([T&J] a subcontractor who hired Shabazz as an independent contractor to haul sand to the site in his truck); United States Fidelity and Guaranty Company ([USF&G] T&J's insurer); and McMillion Dozer Service, Inc. ([McMillion] an independent contractor compacting the sand in the excavation area).[1]
Employers National Insurance Company intervened in the suit for reimbursement of worker's compensation benefits paid in connection with Freeman's death. Various third party petitions were also filed, including a claim by EBASCO Services, Inc. (the *983 general contractor) against T&J and its insurer USF&G for attorney's fees and expenses in defending against both plaintiffs' main demands and T&J's third party demand against EBASCO.
At the conclusion of plaintiffs' case, the trial judge granted T&J and USF&G's motion for directed verdict, dismissing plaintiffs' main demand against them. These defendants remained in the suit for the purposes of EBASCO's third party demand, however.
Following a trial on the merits, the jury exonerated Shabazz and McMillion from fault, and further concluded that Freeman's own negligence barred recovery by plaintiffs. In an April 20, 1983 judgment in consideration of the jury's verdict, the trial judge dismissed plaintiffs' claims. All third party demands were likewise dismissed, except for EBASCO's claim for attorney's fees. In a separate September 27, 1983, judgment, however, this third party claim for indemnification was also denied. It is from these judgments that the parties have appealed.

PLAINTIFFS' APPEAL
Appealing, plaintiffs contend the trial judge erred: 1) in refusing to permit argument and instruction to the jury concerning Occupational Safety and Health Act (OSHA) regulations as the applicable standard of care in this case; and 2) in improperly instructing the jury that the decedent's contributory negligence was a defense to plaintiffs' claims.

OSHA Regulations
The OSHA provision relied on by plaintiffs reads as follows:
"No employer shall use any motor vehicle equipment having and obstructed view to the rear unless: (i) the vehicle has a reverse signal alarm audible above the surrounding noise level or: (ii) the vehicle is backed up only when an observer signals that it is safe to do so."
Plaintiffs attempted to prove non-compliance with this provision to hold Shabazz, T&J and McMillion liable for their failure to equip the dump truck with an alarm audible above surrounding construction noise or to furnish a "flagman" to direct Shabazz in backing down the ramp. Based on a conclusion that plaintiffs had failed to plead the OSHA violation in their petition, however, the trial judge refused argument or instruction concerning OSHA during trial.
Although not formally pleaded, a copy of the OSHA provision was admitted into evidence in the form of a document entitled "Job Rules for Contractors", which had been furnished to participants in the Waterford 3 construction project. McMillion's subcontract and T&J's contract (the former admitted and the latter proffered into evidence) also refer to OSHA requirements. During trial, a McMillion employee and a safety supervisor for EBASCO testified concerning the OSHA standard for alarms and flagmen for backing vehicles. Other fact witnesses to the accident also testified about the presence of a back-up alarm on Shabazz's truck, the noise level of the construction site at the time of the accident, and the audibility of the alarm both before and after the incident.
It is clear that considerable evidence was adduced without objection concerning the necessity for a back-up alarm or a flagman under OSHA. Under these circumstances, despite plaintiffs' failure to plead the statutory provision specifically, OSHA regulations and the issue of compliance were acquiesced in by the parties and are treated as if they had been pleaded. See LSA-C. C.P. Art. 1154; Olivier v. Ourso, 308 So.2d 811 (La.App.4th Cir.1975).
Accordingly, we conclude the learned trial judge erred in refusing to consider the OSHA regulation as the applicable standard of care in the instant case and in refusing to charge the jury on it.

Contributory Negligence
We further find merit to plaintiffs' argument that the trial judge erred in instructing the jury concerning decedent's contributory negligence in stepping into the path of the backing truck.
*984 Over plaintiffs' objections, the trial judge permitted argument about Freeman's failure to exercise reasonable care for his own safety in crossing the ramp, and further instructed the jury to find for the defendants if they had proved that Freeman had "failed to conform to that standard, and by that failure contributed to his own death."[2]
Because this accident occurred in 1977, we apply the law of pedestrian-vehicular accident cases as it existed before the adoption of comparative negligence in Louisiana, and not as it presently exists under LSA-C.C. Art. 2323 and the Supreme Court's most recent interpretation in Turner v. New Orleans, Public Service Inc., 471 So.2d 709 (La.1985). Accordingly, under the earlier standards applicable to the instant case, despite any contributory negligence on a pedestrian's part, an operator of a vehicle or heavy equipment is responsible for injuries caused when his vehicle strikes the pedestrian, where the operator observed (or should have observed through reasonable care) the pedestrian in a position of peril of which he was apparently unaware. Guilbeau v. Liberty Mut. Ins. Co., 338 So.2d 600 (La.1976); Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La.1978). Significantly, however, although a pedestrian's contributory negligence is no defense to liability, a motorist is not at fault if he exercises all reasonable care to protect a pedestrian who nonetheless suffers injury. Baumgartner, supra.
Several recent cases from this circuit, involving accidents prior to the adoption of comparative negligence in Louisiana, have followed Baumgartner and Guilbeau to preclude the defense of contributory negligence in pedestrian-vehicular equipment cases in work areas without marked traffic lanes. See Larson v. Huskey, 440 So.2d 769 (La.App.4th Cir.1983); Brown v. Lykes Bros. S.S. Co., Inc., 422 So.2d 213 (La. App.4th Cir.1982); Oliver v. Capitano, 405 So.2d 1102 (La.App.4th Cir.1981), writs denied 407 So.2d 731, 407 So.2d 734 (La.1981).
Applying this jurisprudential rule, we conclude the trial judge erred in permitting oral argument and jury instructions concerning Freeman's contributory negligence in this case. Under the applicable law, although Freeman's action in stepping into the path of the truck may have been relevant to the question of the defendant truckdriver's primary negligence (whether the driver should have observed the pedestrian in a position of peril), the issue of Freeman's inattention to the approaching vehicle should not have been placed before the jury as a bar to plaintiffs' recovery. Significantly, however, during its deliberations, the jury requested and received repeat instructions concerning Freeman's negligence. Moreover, the verdict form erroneously directed the jury to consider Freeman's contributory negligence regardless *985 of its answers to earlier interrogatories concerning the defendants' fault. Under these circumstances, we conclude that these errors tainted the jury's findings in their entirety and require a reversal.

SCOPE OF REVIEW
Because errors of law have interdicted the jury's findings, we cannot apply the manifest error rule in this case. Nonetheless, the record contains evidence, offered without objection or by way of a proffer, which allows this court to make an independent evaluation without a remand. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Gordon v. City of New Orleans, 363 So.2d 235 (La.App.4th Cir.1978), affirmed 371 So.2d 768 (La.1979).
In reversing the trial court's judgment and rendering a judgment on the record before us, however, we are mindful that the main demands against T&J Trucking Service, Inc. and its insurer were dismissed on a directed verdict at the conclusion of plaintiff's case in chief. In such instance, when the trial court's grant of a directed verdict is later reversed by the Court of Appeal, fairness usually dictates a remand of the case for retrial to allow the dismissed defendant an opportunity to present a defense. See dictum in Aetna Cas. and Sur. Co. v. Nero, 425 So.2d 730, 731 (footnote 2) (La.1983); Scheidel v. Melle, 431 So.2d 420 (La.App.4th Cir.1983), concurring opinion.
In the instant case, however, a remand would be vain and useless. Over eight years have passed since the fatal accident, and nearly three years since the trial. The full and complete record of testimony now before us probably can never be reconstructed in such detail. Witnesses may be unavailable and memories clouded. Indeed, to remand under these peculiar circumstances would defeat judicial economy and work an even greater injustice to all parties by further delay.
Furthermore, evidence of T&J's involvement in the case was largely developed through documents and undisputed testimony. Moreover, despite the directed verdict, T&J's insurer, USF&G, participated in the trial to its conclusion, questioning witnesses and making closing arguments to the jury. Thus, our consideration of T & J's liability will not violate due process.

TRUCK DRIVER'S LIABILITY
The fatal accident occurred approximately midway down a 400 foot long ramp used by some 50 dump trucks to haul sand to the excavation area where it was compacted to serve as a foundation for the plant under construction. Freeman and two co-workers had parked their pickup truck on the side of the 40 foot wide ramp prior to crossing it on foot to perform some electrical work. Although his two companions safely crossed, Freeman remained behind for a short time before stepping (without looking for traffic) into the path of Shabazz's backing dump truck.
Two witnesses saw the impact. Harold Mason, a McMillion employee 250 feet away at the bottom of the ramp, testified that the decedent began walking into the truck's path on an angle across the ramp at a distance of about 5 or 6 feet from the backing dump truck. A second witness, John Pitts, a quality control man for the general contractor, also saw the accident from a distance of 75-80 yards and stated that Freeman stepped out on a diagonal with his back to the approaching dump truck when it was 3-3½ feet away and traveling approximately 7-8 mph.
Shabazz, the truckdriver, stated that he was looking from left to right through the mirrors on both sides of his truck as he backed down the ramp at 5-10 mph, but did not see the decedent until after the accident. His truck was equipped with a "back-up alarm" that made a "beeping" sound when the truck was in reverse gear. Shabazz testified that the alarm, which he had obtained at a junk yard and installed himself, was functioning as he backed the truck. Following the accident, the alarm was operative when tested by law enforcement officers at the site.
*986 Significantly, however, even though the alarm was in working order after the accident, no witness heard it before impact. The decendent's co-workers, Vincent Culotta and Earl J. Savin, both testified that they did not hear the alarm although they had seen the dump truck beginning to back down the ramp approximately 150 feet away. Culotta testified that at the time of the accident the noise level at the construction site was "excessively high" and that there were several diesel trucks and other heavy equipment operating in the area. Both he and Savin noted that when the alarm was tested following the accident, the equipment on the site had shut down and it was considerably less noisy than when Freeman was struck. Especially significant is the testimony of Mason, the McMillion employee, who stated that he heard no alarm as he ran to stop Shabazz's truck after impact.
For liability to be placed on the truck driver, a conclusion must be made either that Shabazz's failure to see the decedent before impact was caused by Shabazz's exercise of less than reasonable cause in the operation of the truck, or that the back-up alarm was not sufficiently audible.
The evidence is clear that Freeman stepped into the path of the truck suddenly and without warning under circumstances which compel a conclusion that Shabazz was not guilty of exercising less than reasonable care in failing to see Freeman in time to prevent the accident. However, the evidence is also clear that Shabazz failed to provide on his truck a back-up alarm audible above the surrounding noise level at the construction site. As a self-employed trucker operating on the site, Shabazz had a duty to observe the OSHA requirement that no employer shall use any motor vehicle equipment having an obstructed view to the rear unless the vehicle has a reverse alarm signal audible above the surrounding noise level or unless the vehicle is backed up only when an observer signals that it is safe to do so.
As this court noted in Oliver v. Capitano, supra, when a defendant has a duty designed to eliminate a risk of injury to a plaintiff from the plaintiff's own inattention, lack of skill, or negligence, the defendant cannot use that very inattention as a means to free himself from responsibility for a breach of the duty to protect against precisely the fault that occurred. The OSHA requirement of an audible alarm is specifically designed to prevent the risk of an accident like this one, where an inattentive worker on a noisy job site without clearly marked traffic lanes inadvertently steps into the path of moving heavy equipment driven with limited visibility to the rear.
The OSHA requirement presupposes an alarm that can be heard above the noise of the truck on which it is installed. In this regard, our case is similar to Larson v. Huskey, 440 So.2d 769 (La.App.4th Cir. 1983), where we allowed recovery to a pedestrian struck by a backing truck equipped with a warning bell that could not be heard above the high degree of surrounding noise at the site. Although witnesses testified that they had no trouble hearing the noise of the diesel engine on Shabazz's truck even without the back-up alarm, the truck was one of many pieces of heavy equipment operating at the time of the accident, and undoubtedly the noise of its engine blended into the surrounding din.
The evidence considered, we hold that Shabazz's fault in failing to provide an audible alarm above the surrounding noise level was a legal cause of this fatal accident.

DIRECTED VERDICT  T&J's LIABILITY
At the conclusion of plaintiffs' case in chief, the trial judge granted T&J Services, Inc.'s motion for a directed verdict. The grounds for the motion were that the truck driver was an independent contractor whose negligence, if any, could not be imputed to T&J and that there was no evidence or allegation of independent fault on the part of T&J. We disagree.
Although it is true that T&J had a principal-contractor relationship with Shabazz *987 and could not be held liable under the doctrine of respondeat superior, a broader question arises whether T&J owed an independent duty to adhere to OSHA regulations to protect the decedent under the circumstances.
T&J contracted with LP&L and EBASCO to furnish and deliver pumped sand to the construction site. The field specifications of the contract contain the following requirements for health and safety to be observed by T&J.
"The Contractor [T&J] shall take all reasonable precautions to prevent any accident in connection with the performance of this work.

"The importance of safety of all workers on the project shall be recognized, and accident prevention shall be an intregal part of the Contractor's operations. The Contractor shall conduct the work in a safe and practical manner in conformance with the safety and health standards made applicable to the work by the Occupational Safety & Health Act of 1970 and any amendments thereto and all order, rules and regulations issued thereunder." [Emphasis ours]
Although it is true that in fulfilling its contractural obligation to deliver sand T&J was free to enter into contracts with independent trucker-haulers, T&J could not thereby delegate or contract away its own independent responsibility to insure the safety of workers on the site who might be affected by the sand delivery operation. To safeguard Freeman, who was a member of the class of workers to be protected, T&J had the duties of inspecting the backup alarms on the trucks provided by its independent contractors and monitoring conditions on the construction site that affected the sand delivery. It was up to T&J, as well as the truck drivers themselves, to determine whether the truck alarms were audible above the surrounding noise and, if not, to provide a flagman to signal the trucks when it was safe to proceed down the ramp to the excavation area.
Evidence adduced at trial indicates that T&J failed to observe safety regulations in this case. Scott T. Carpenter, safety supervisor for EBASCO, testified that T&J had the responsibility for seeing that the trucks hauling sand on the job had the proper OSHA equipment. Shabazz testified that he knew of no supervisor from T&J who was present at the site and that no one from T&J had checked to see if he had a back-up alarm on his truck or had given him a copy of any safety regulations. The only witness from T&J, a former employee, testified that he was not familiar with the safety regulations that were part of the contract between T&J and EBASCO.
Under these circumstances, we conclude that T&J's breach of its duty to the decedent also constitutes a legal cause of the fatal accident and makes T&J solidarily liable with Shabazz for plaintiffs' damages.

McMILLION'S LIABILITY
We find no basis for holding McMillion Dozer Service, Inc. at fault for the accident.
Although McMillion had a contractual duty to observe OSHA regulations, the evidence establishes that McMillion's work on the construction site was limited to compacting the sand in the immediate area where it was dumped. McMillion exercised no responsibility over the hauling of the sand itself, and merely directed the loaded trucks where to dump once they were on the floor of the excavation. Under these circumstances, we conclude that McMillion owed no legal duty to supervise the movement of trucks on the ramp ultimately leading to McMillion's work area and therefore breached no duty owed to the decedent in this case.

QUANTUM

Survival Action-Decedent's Pain and Suffering
The decedent was survived by his widow and two sons, both majors. Because Freeman was killed apparently instantly, we conclude the record warrants only minimal recovery for pain and suffering. In the absence of medical evidence *988 and based on the circumstances surrounding the accident, we conclude that a reasonable award is $10,000.00 for the survival action claim. The greater damages recoverable are those for Freeman's "wrongful death", i.e. damages to his widow and sons for loss of love and affection and loss of support.

Wrongful Death-Loss of Love and Affection
Joyce Freeman, decedent's wife of 26 years, was profoundly affected by her husband's sudden death. Although formerly socially active, Mrs. Freeman became depressed by the loss of her husband and confined herself largely to her home. At one point she attempted suicide by taking an overdose of Valium, although she later improved through consultation with a social worker. In light of this evidence, we conclude that Mrs. Freeman is entitled to an award of $125,000.00 for loss of love and affection.
Decendent's two sons Robert (age 25) and John (age 31) also enjoyed a close bond with their father. The evidence reflects that they both enjoyed a variety of activities with him, sought his counsel, and confided in him. We conclude that the evidence warrants an award of $25,000.00 to each son for loss of love and affection.

Wrongful Death-Loss of Support
At his death, John Freeman was 51 years old and had a work-life expectancy of 11.7 years. Based on wage and hour information from Freeman's local electricians' union, plaintiffs' actuarial expert, Phillip J. Clesi, calculated net past loss of community income over a 5.65 year period (from the date of death until the date of trial) at $161,258.00 adjusted for inflation. He calculated the future loss of community income over the remaining 6.07 year work life expectancy to be $173,305.00, based on a discount rate of 9.52% interest and a productivity-inflation factor of 9.27%. According to Clesi, Mrs. Freeman's loss is one-half of these income figures from a community property standpoint.
Using a discount factor of 9.52%, Clesi also calculated the community loss from Freeman's union pension benefits as $14,568.00 from the local union, $8,819.00 from the National Electricians Benefit Fund, and $201.00 from an international plan. Clesi calculated that a sum of $18,552.00 would be needed to give Mrs. Freeman $395.00 per month in pension annuity benefits from these three plans. He further calculated a present value of $8,664.00 in lost health insurance benefits.
Using the same data furnished by the decedent's Union, Kenneth Boudreaux, an expert economist, calculated past loss of support at $52,147.70 (assuming a discount factor of 10.25% and no growth) or $56,468.00 (using a 4% growth factor). Subtracting from these figures the $190.00 byweekly support payments received by Mrs. Freeman under the worker's compensation law, Boudreaux calculated past loss of support at either $24,236.00 or $28,557.00. He calculated loss of future support at $23,651.00 (assuming no growth) or $58,168.00 (assuming a 4% growth factor). Subtracting Mrs. Freeman's worker's compensation benefits, Boudreaux reduced these projected loss of future earnings to either $21,171.00 or $35,687.00.
The evidence considered, we conclude that Clesi's calculations more accurately reflect Mrs. Freeman's loss of support than do Boudreaux's. Accordingly, we award her $80,629.00 for past loss of support and $86,652.50 for future loss of support (both figures representing her one-half interest in the total community loss, adjusted for inflation and real wage growth). Recognizing that pension benefits are a form of deferred compensation, we further award an additional sum of $18,552.00 (based on Clesi's calculations) to compensate Mrs. Freeman for loss of income from her late husband's three pension plans, although we decline to award any speculative amount attributable to health insurance benefits.
Employers National Insurance Company, intervenor, is entitled to recovery (by preference and priority from this award) of all *989 amounts it has paid or will pay to plaintiffs under the worker's compensation law.

INDEMNIFICATION
EBASCO Services, Inc. (EBASCO), though voluntarily dismissed by plaintiffs during trial, appeals the trial court's September 27, 1983 judgment which dismisses EBASCO's claim against T&J and its insurer USF&G for attorney's fees and expenses incidental to the defense of both plaintiffs' claim and T&J's third party demand against EBASCO.
In support of its third party claim, EBASCO relies on an indemnification clause in T&J's contract for the furnishing and delivery of sand to the Waterford site. Article C-24 of the "General Conditions" of the contract provides as follows, in pertinent part:

B. CLAIMS BY PERSONS OTHER THAN EMPLOYEES  OR AGENTS OF CONTRACTORS
The Contractor [T&J] agrees fully:
"1. To indemnify and save harmless the Owner from and against all claims and actions, and all expenses and attorneys' fees incidental to the defense of any such claims or actions...."
EBASCO contends that it is an "owner" within the meaning of the above-cited clause and is entitled to indemnification of expenses and attorney's fees. We agree.
In a contract entered into between LP&L and EBASCO on the one hand and T&J on the other, LP&L is designated as the owner and EBASCO is designated as an agent. The contract provision dealing with indemnification further defines "Owner" for the purposes of the indemnification article "as including members of the Board of Directors, officers, agents, representatives, and employees of Owner". (Emphasis ours). Reading these provisions in pari materia, we conclude that EBASCO, as contractual agent for LP&L, falls within the definition of "Owner" in Part B of the indemnification clause, supra, and therefore is entitled to be indemnified by T&J as provided.
As we read the indemnification provision T&J is required to "indemnify and save harmless" EBASCO "from and against all claims and actions, and all expenses and attorneys' fees incidental to the defense of any such claims and actions". (Emphasis ours). Moreover, because these fees and expenses are due for "defense" against the claims, EBASCO is entitled to recovery of them despite the absence of any judgment against EBASCO on either the main or third party demands.
Accordingly, EBASCO is entitled to a remand on this claim to allow evidence in the trial court on the amount of attorney's fees and expenses involved.

DECREE
Accordingly, the April 20, 1983 and the September 27, 1983 judgments of the trial court are reversed and set aside. Judgment is now recast and rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Joyce Freeman, John H. Freeman and Robert J. Freeman and against Floyd Lee Varnado, a.k.a. Kasib Salah Shabazz, T&J Trucking Services, Inc. and United States Fidelity and Guaranty Company, in solido, in the sum of $10,000.00 together with legal interest from date of demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Joyce Freeman and against Floyd Lee Varnado a.k.a. Kasib Salah Shabazz, T&J Trucking Services, Inc., and United States Fidelity and Guaranty Company, in solido, in the sum of $310,833.50, together with legal interest from date of demand until.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that there be judgment in favor of John H. Freeman and against Floyd Lee Varnado a.k.a. Kasib Salah Shabazz, T&J Trucking Services, Inc., and United States Fidelity and Guaranty Company, in solido, in the sum of *990 $25,000.00 together with legal interest from date of demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Robert J. Freeman and against Floyd Lee Varnado, a.k.a. Kasib Salah Shabazz, T&J Trucking Services, Inc. and United States Fidelity and Guaranty Company in the sum of $25,000.00, together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Employers National Insurance, intervenor, for the recovery by preference and priority from plaintiffs' awards of all amounts intervenor has paid or will have paid to plaintiffs until the judgment of this court becomes final, together with legal interest on each payment from the date of judicial demand plus interest on each future payment; and, furthermore, that intervenor receive a credit against all sums it may pay in the future to plaintiffs pursuant to its obligations under the worker's compensation act.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of McMillion Dozier Service, Inc. and against Joyce Freeman, John H. Freeman, and Robert J. Freeman dismissing plaintiffs' suit.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of McMillion Dozier Service, Inc. and against Employers National Insurance Company, Intervenor, dismissing the Intervention at Intervenor's costs.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of third party plaintiff EBASCO Services, Inc. and against T&J Trucking Services, Inc. and United States Fidelity and Guaranty Company on its third party demand for expenses and attorney's fees incidental to EBASCO's defense of plaintiffs and third party defendant's claims. For the limited purpose of determining the amount of those attorney's fees and expenses, the matter is remanded to the trial court.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other third party demands and claims in the suit are hereby dismissed.
Costs to be equally divided between Floyd Lee Varnado, a.k.a. Kasib Salah Shabazz and T&J Trucking Services, Inc.
APRIL 20, 1983 JUDGMENT AND SEPTEMBER 27, 1983 JUDGMENT REVERSED AND SET ASIDE; RECAST AND RENDERED; REMANDED IN PART.
CIACCIO, J., concurs with written reasons.
SCHOTT. J., dissents with written reasons.
CIACCIO, Judge, concurs.
This is not a Baumgartner situation and I disagree with using that case as a basis for the reversal.
The OSHA regulation was designed to protect an inattentive, i.e., negligent, worker from self-injury. To allow the worker's inattentiveness to act as a bar to his recovery under a contributory negligence theory would defeat the purpose of the OSHA regulation. It would permit the OSHA violator to breach his duty to comply with the safety measures mandated by the OSHA regulation and escape liability because the fault of the injured victim contributed to the accident. If such were the case, the OSHA violator would have no incentive to comply with the stated public policy of Congress, i.e., to provide a safe work place and to prevent avoidable industrial accidents.
Accordingly, I find that contributory negligence was not applicable in this case and it was error to submit that issue to the jury. I concur with the majority in holding Shabazz negligent for backing up his vehicle without complying with the OSHA requirements.
SCHOTT, Judge, dissenting:
I would feel more comfortable with a remand of this case for a new trial. I agree with the majority that the trial court erred in failing to instruct the jury on the *991 OSHA regulation. It is possible that the jury may have reached a different conclusion had they been properly instructed. But the jury was aware of the regulation and decided the case against plaintiffs anyway. This is an indication that the jurors were unimpressed with plaintiffs' witnesses or the theory that a louder signal on Vernado's truck would have prevented the accident. While the appellate court may review facts under our constitution this presupposes that a trial judge or jury has first found the facts in order for the appellate court to conduct a review. These parties opted for a jury to find the facts. It is unfair to deprive them of the jury because the trial judge made a mistake. Nonetheless, we are bound by Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), and must make credibility calls and factual determinations as though we were a jury but without the benefit of seeing or hearing live witnesses.
Conceding for the sake of argument that Freeman's contributory negligence is not a defense to his survivors' claim, the record supports the conclusion that there was no negligence on the part of Varnado or T&J which constituted a cause in fact of the accident. Freeman stepped right in the path of a truck when it was no more than six feet from him. His failure to see what he should have seen constituted negligence which was the sole cause of the accident.
NOTES
[1] Other defendants originally named in the suit included: Louisiana Power and Light (owner of the power plant) EBASCO Services, Inc. (general contractor), Fischbach & Moore Construction Company (the decedent's employer) and J.A. Jones Construction Company (the subcontractor filling the excavation who had contracted with McMillion to compact the sand). Plaintiffs later voluntarily dismissed their claims against these defendants, however, and proceeded against Shabazz, T&J, USF&G and McMillion.
[2] In pertinent part, the trial judge charged the jury as follows:

"In this case, the standard applicable to John Freeman's conduct is the requirement that he exercise that degree of care which we might reasonably expect a person to exercise for his own safety and protection. On this issue the defendants have the burden of proof. In other words, the defendants have the burden of establishing, by a preponderance of the evidence, that John Freeman failed to conform to that standard, and by that failure contributed to his own death. If a defendant convinces you of that, then you must return a verdict for that defendant. If he does not, and the plaintiffs have otherwise proven the case by a preponderance of the evidence, then you must return a verdict for the plaintiffs.
"In deciding this issue, that is, whether the contributory negligence of John Freeman should bar recovery by the plaintiffs, the test is whether the truck driver, Mr. Shabazz, observed or should, by the exercise of reasonable care, have observed Mr. Freeman in a position of peril of which he, Mr. Freeman was apparently unaware. If so, then the truck driver is responsible for this injuries or the death caused when his vehicle struck Mr. Freeman, the pedestrian, in his vehicle's path despite any contributory negligence on Mr. Freeman's part, providing that, after the duty to make such observation arose, the driver, Mr. Shabazz, could have reasonably avoided the accident...."
Interrogatory # 5, which was submitted to the jury and answered affirmatively, read as follows:
"Was John Freeman negligent such that his negligence should bar recovery by plaintiffs?"