503 So.2d 540 (1987)
Percy JACOBSON and Carol Roques Jacobson
v.
J.H. HARRIS and Louis Dutel, Jr.
No. CA-5690.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
Writ Denied April 3, 1987.
*541 Frank J. D'Amico, Robert T. Hughes, Marie O. Riccio, New Orleans, for plaintiffs.
Joseph R. Ward, Jr., Patrick F. Lee, Ward & Clesi, New Orleans, for defendants.
Before GULOTTA, GARRISON, JJ. and PRESTON H. HUFFT, J. Pro Tem.
GULOTTA, Judge.
Carol Roques Jacobson and Percy Jacobson appeal from a dismissal, after a trial on the merits, of their damage suit against owner-lessors for injuries allegedly sustained from a bathroom mirror falling on the plaintiff-wife. We affirm.
Plaintiffs' version of the incident is that on September 18, 1983, Carol was brushing her teeth in the downstairs bathroom of a townhouse apartment, rented by Percy Jacobson (her then boyfriend and now husband), when a bathroom mirror over the sink fell on top of her.[1] As a result, Carol sustained a compressed disc resulting in a cervical fusion.
The jury found defendants "not negligent in the operation and/or maintenance" of the apartment and concluded that the "premises" was not "defective such that an unreasonable risk of harm existed". In a February 27, 1983 judgment, in consideration of the jury's verdict, the trial judge dismissed plaintiffs' claims.
Appealing, plaintiffs contend that 1) the trial judge erred in failing to enforce a pre-trial settlement between the parties; 2) the jury manifestly erred in rendering a verdict in favor of defendants; and 3) the trial judge erred in admitting evidence dealing with fraud which had never been pled by defendants.

FAILURE TO ENFORCE PRE-TRIAL SETTLEMENT
Plaintiffs contend that because there was a May 17,1985 pre-trial settlement between the parties the August 23, 1985 judgment dismissing their motion to enforce the settlement was in error. In support of this contention, plaintiffs argue that defendants' attorney had confirmed the acceptance of the settlement in writing on May 20, 1985. We disagree.
LSA-C.C. Art. 3071 states:
"A transaction or compromise is an agreement between two or more persons, *542 who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balance by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form."
The requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. It would suffice that there be a written offer signed by the offeror and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement contemplated by LSA-C.C. Art. 3071 has been perfected. Felder v. Georgia Pacific Corp., 405 So.2d 521 (La.1981).
In the instant case, we can find no proof, either written or recited in open court, of the existence of any settlement agreement. Although the record contains three letters, two written by defendants' attorney and one by plaintiffs' attorney, mentioning a settlement, a reading of these letters does not evidence the existence of an agreement between the parties. Accordingly, we find no error in the trial judge's denial of plaintiffs' motion to enforce the alleged settlement.

MANIFEST ERROR
In support of their manifest error contention, plaintiffs argue that because there is eyewitness testimony of the existence of the accident, they have met their burden of proof for establishing strict liability under LSA-C.C. Arts. 2317 and 2322.[2]
In order to recover under Arts. 2317 and 2322 strict liability against an owner of a building, the injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others, and that damage resulted from that risk. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
Carol Roques Jacobson testified that she was in the downstairs bathroom brushing her teeth when something fell on her. According to plaintiff, she was not aware it was the mirror until her husband came in and took it off. The witness further testified that she was unaware of any problems with the medicine cabinet and that she did not fabricate the incident. In addition, this plaintiff denied that her husband had dropped the mirror on her in order to assert an insurance claim.
Percy Jacobson testified that his wife was in the bathroom when he heard a crash. He then went into the bathroom where he saw the mirror on top of her. Jacobson further stated that he had not noticed the cabinet being loose, and that he had not staged the accident, by loosening the bolts, in order to get insurance money.
Mayer Cohn, a visitor in the apartment at the time of the accident stated that he was sitting in the living room when he heard a crash, whereupon he followed Jacobson into the bathroom. This witness corroborated Jacobson's testimony.
Wayne Gravois, plaintiffs' architect expert, testified that the installation of the three piece unit by the use of toggle bolts secured in gypsum board, was not an acceptable *543 construction practice in buildings used by the public such as apartments.[3] According to Gravois, the toggle bolts should have been attached to "solid wood". Basing his testimony on photographs of the bathroom wall taken (by Mayer Cohn) after the mirror and medicine cabinet had been removed, this witness was of the opinion that the top part of the medicine cabinet was not secured with wing nuts. In addition, he speculated that the medicine cabinet could have loosened as a result of sliding the closet doors back and forth or from vibrations resulting from use of the stairs.
Plaintiffs' expert carpenter, Almo Taylor, substantially corroborated Gravois' testimony that the cabinet was not properly attached.
On the other hand, Fred Vanderbrook, defendants' expert consulting engineer, testified that he went to the apartment and examined the unit.[4] He related that the lower medicine cabinet was secured by four toggle bolts (two upper and two lower) and the (above the mirror) light was secured by two toggle bolts. According to Vanderbrook, a toggle bolt is used to secure objects to sheetrock or gypsum board. He stated that the unit in the instant case was properly secured. Vanderbrook additionally testified that he had examined the holes for the toggle bolts that were used to secure the medicine cabinet. This examination revealed that the lower holes were ragged, thus indicating that the toggle bolts had been pulled through. On the other hand, the upper holes were clean and this indicated that the toggle bolts had been unscrewed. He explained that because the upper toggle bolts do 90% of the work, it would have been impossible for the cabinet to have stayed there for thirteen or fourteen years without the upper toggle bolts. He also related that if wear and tear had loosened the bolts it would have been a gradual process and the cabinet would have demonstrated some looseness prior to the mirror falling. In this expert's opinion, someone had unscrewed the upper toggle bolts.
Billy Lawhorn, an employee of a company which does maintenance work for the apartments, testified that during the entire five or six years that he has worked for the complex, he had never seen a mirror fall.
Delores Fletcher, the manager of the apartment complex, testified that the mirror was not loose when the tenants moved in.
Considering the conflicting expert testimony, a reasonable conclusion can be reached that, based on credibility, the jury found the mirror was properly installed and therefore did not create an unreasonable risk of injury. A reasonable conclusion can also be reached that the jury simply did not believe that the mirror fell on Carol Jacobson or that the mirror had been intentionally loosened by either one of the Jacobsons or Cohn. Whatever the basis for the jury's conclusion, we cannot substitute our judgment for that of the jury or say that the jury manifestly erred.

DEFENSE OF FRAUD
Plaintiffs lastly contend that defendants base their defense on fraud, which they did not plead. Because of this failure to plead fraud and the trial judge's failure to instruct the jury regarding the heavy burden of proof required to show fraud, plaintiffs argue that evidence regarding fraud should not have been admitted. We disagree.
Although an affirmative defense must be specifically pled, LSA-C.C.P. Art. 1154 provides that when an issue not raised by the pleadings is tried by express or implied consent of the parties, it should be treated in all respects as if it had been raised by the pleadings.
In the instant case, although defendants did not by answer, raise the defense of fraud, testimony alluding to the "staging" of the accident was elicited by both sides. Included in this was testimony *544 given by plaintiff witnesses, Carol Jacobson and Percy Jacobson, that they had not staged the accident to collect insurance and the testimony of defendants' expert witness that someone had unscrewed the upper toggle bolts. All of this testimony was given without any objection by either side. Under these circumstances, we conclude that the pleadings have been enlarged by this testimony and is admissible. Freeman v. Varnado, 480 So.2d 980 (La.App. 4th Cir.1985), writ denied 484 So.2d 674 (1986). Martinez v. Dixie Brewing Co., Inc., 463 So.2d 628 (La.App. 4th Cir.1984), writ denied 467 So.2d 537 (La.1985). Furthermore, our examination of the record reveals no request by plaintiffs for jury instructions regarding fraud or any objection to the lack of such an instruction being given.
Accordingly, we find no error.
Having so concluded, we affirm.
AFFIRMED.
NOTES
[1] The bathroom mirror is part of a three piece unit consisting of a light, the mirror, and a medicine cabinet. The light and the medicine cabinet are both secured to the wall with toggle bolts. The mirror is held in place between the light fixture and cabinet by grooves located on the underside of the light fixture and on the top of the medicine cabinet.
[2] (A) LSA-C.C. Art. 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications".

(B) LSA-C.C. Art. 2322 provides that "[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction".
[3] A toggle bolt has two wings on the nut and is slipped through an already drilled hole. The spring activated wing nut is then opened up and the bolt is tightened.
[4] Although the testimony is unclear regarding the exact dates that Vanderbrook examined the scene of the accident, it does indicate that his visits occurred within a year after the accident.