405 So.2d 1102 (1981)
Joan Oliver, wife of/and Donald OLIVER
v.
Sam P. CAPITANO, John Doe & ABC Insurance Company.
No. 11868.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
On Rehearing October 5, 1981.
Writs Denied December 4, 1981.
*1103 Turner & Young, Emile L. Turner, Jr., George P. Hebbler, Jr., New Orleans, for plaintiffs-appellants.
Burton G. Klein, Klein & Klein, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, James Ryan, III, Leonard W. Martin, Paul S. Hughes, New Orleans, for defendant-appellee.
Before REDMANN, BARRY and KLIEBERT, JJ.
REDMANN, Judge.
Does an insane person's failure to respond reasonably self-protectively towards a dump-truck's presence in her vicinity constitute contributory negligence barring her recovery of damages resulting from the dump-truck driver's backing over her without looking? We answer no, reversing a judgment on jury verdict to the contrary. Our view is that the very purpose of obliging a truck driver to look and to see (in addition to sounding a warning) as he or she backs up is to avoid running over a person in his or her path who might not be able to save himself or herself because of infancy, deafness or insanity, or because physically prevented from escape, or because of a similar reason. Our temporarily insane plaintiff's insanity cannot be counted contributory negligence, any more than a deaf person's deafness could, because those and similar conditions are precisely the reasons for the truck driver's duty in the first place.
Insanity may be an unwelcome word to describe plaintiff wife's mental condition, but it fits her bizarre behavior of the whole night before this morning accident. Plaintiff had a history of mental illness. From 8 p. m. the night before the accident she roamed her neighborhood in mental distress. At 2 a. m. she awakened a Baptist minister. She was then picked up by the police who called her husband, who came to take her home. She left again. At 5 a. m. she awakened neighbors to scream to them that her husband was trying to kill her, and had brought her to a black Mass where many important people tried to force her to do "horrible things" including bestiality. The neighbors called a Catholic priest, who came at 5:40 a. m. and stayed until 6:15, then took her to 6:30 Mass and thence to her home, which she asked him to exorcise. The priest offered a blessing of the house, but when he would not kneel (because of arthritis) plaintiff left again to resume her wandering. Between 8 and 8:30, another neighbor saw her, dancing and climbing on earth-moving equipment in a vacant lot next door. At about 9:30 she last returned home and went out again, going to another vacant lot, where the accident occurred.
*1104 Plaintiff testified that she knelt in the middle of the lot, looking towards its rear. She heard and then saw a truck entering the lot but turned back to her original position. The truck ran over her (moving forward, she said).
Defendant truck driver testified he could not have rolled over plaintiff and his testimony concerning his movements in the lot dumping sand would support a conclusion that he was not the cause of her injury. The jury, however, expressly found that his truck did "strike or roll over Mrs. Oliver, causing her injuries." We add that her injuries (discussed in connection with quantum) are consistent with that conclusion, which, in any event, we cannot in the proper discharge of the function of an appellate court set aside as clearly wrong. Arceneaux v. Domingue, La. 1978, 365 So.2d 1330.
The jury's finding of negligence on defendant driver's part is attributable to his testimony that he backed into the lot (as he had with several earlier loads of sand) without having his helper get down to assist him in seeing that the path was clear, relying instead on two rear-view mirrors (each with a wide-angle "spot") and the automatic bell that sounded as the truck backed up. The driver testified that he had not yet moved his truck forward after dumping his load when his assistant found plaintiff at about 11 a. m.
The jury's finding of contributory negligence on plaintiff's part can only be attributed to the trial judge's instructions on law. Following a similar instruction as to the motorist the court instructed:
A pedestrian, or someone not in a vehicle, is also required to exercise ordinary, reasonable care, and he should not expose himself to danger or to harm, intentionally or otherwise.
Then, in addressing the defense of contributory negligence, the judge described defendant's burden as:
to establish, by a preponderance of the evidence, that Mrs. Oliver failed to use ordinary and reasonable care for her own safety, and that this failure caused her injuries. ... If you conclude ... that Mrs. Oliver's contributory negligence was a proximate cause of her injuries, then you should render a verdict [for defendants].
We deem it clearly wrong to require of an insane person "reasonable care for her own safety" unless counterbalanced by instruction on duty-risk as found in Baumgartner v. State Farm Ins. Co., La. 1978, 356 So.2d 400, or at least on last clear chance as found in Baumgartner and Pence v. Ketchum, La. 1976, 326 So.2d 831.
Plaintiff objected to these instructions as inconsistent with Baumgartner and Jones v. Rousseau, La.App. 4 Cir. 1979, 370 So.2d 600, writ refused 372 So.2d 1046 and 1047. Those cases surely rule that contributory negligence is not a bar to a pedestrian's recovery from a negligent motorist, but defendants argue they are inapplicable in respect to a person kneeling in a vacant lot towards whom a loaded dump-truck is backing. We disagree.
The Baumgartner principle, as foretold in Guilbeau v. Liberty Mut. Ins. Co., La. 1976, 338 So.2d 600, is equally applicable whenever the menacing momentum of a massive automotive vehicle intrudes upon the nonmenacing presence of a person not also operating an automotive vehicle. Indeed, Guilbeau itself seems authority for holding defendant truck driver liable, for its basic facts, a truck backing into one not in a vehicle, are the same as ours.
The fundamental duty-risk analysis of Baumgartner, like that of Boyer v. Johnson, La. 1978, 360 So.2d 1164, and of Rue v. State Dept. Hwys., La. 1979, 372 So.2d 1197, is applicable here. When a duty is imposed upon one person for the purpose of eliminating a risk of injury to a second person from the second person's own inattention, lack of skill, or negligence, the fact that the second person was inattentive, unskillful, or negligent cannot free the first person from responsibility for breach of the duty to protect against precisely the fault that occurred. Thus Boyer holds that because the duty not to employ children to operate dangerous machinery intends to protect them *1105 from the risk arising from their youthful inexperience and unwisdomtheir own lack of skillthen the fact that that very lack of skill caused their injury cannot be a defense: if it is, the duty is simply unenforceable. Similarly, as in Rue, if the duty to provide reasonably safe shoulders along a highway intends to protect even inattentive drivers who leave the road, then inattentive drivers' leaving the road cannot bar recovery as if contributory negligence. As Baumgartner indicates, if the law declares it one's responsibility to protect another against that other's own drunkenness (see also Pence), the law cannot at the same time declare that the one thus made responsible is not responsible precisely because of that other's own drunkenness.
The determinative question is whether a dump truck driver's obligation to see where he is backing and so to avoid running over persons (or property) includes among the risks it intends to avoid the risk that a person of unsound mind might be in the truck's path and be prevented by unsoundness of mind from escaping the truck. We have already revealed our view. We deem the truck driver's duty owed to every person in his path. The reasonably prudent person would move out of the truck's path, but some persons have disabilities that prevent their moving, yet the truck driver's duty is owed to them, whether their own failure to protect themselves is caused by simple inattentiveness as in Guilbeau and Rue, youth as in Boyer, drunkenness as in Pence and Baumgartner, or mental illness (perhaps even a suicidal oblivion) as here.
We therefore reverse on liability and cast both the truck driver and plaintiff's own insurer on its uninsured motorist coverage.

Quantum
Plaintiff wife's counsel is perhaps partisan but not unfair in saying her "injuries are devastating but, through determination and courage, her permanent injuries are moderate in nature." The principal original injuries were a laceration of her left ear lobe (not appreciable in later pictures), puffiness of the face, fracture ("with slight angulation") of the left upper arm, "multiple" rib fractures and sternum fracture, compression fracture of lumbar vertebra, fracture of the pubic ramus, rupture of the urinary bladder, and tissue damage to the upper left thigh. Those injuries required surgery to repair the torn bladder (including further exploration to assure that no other organ was damaged) and surgery (because plaintiff's noncooperative mental condition contraindicated the ordinary, nonsurgical treatment) to stabilize the upper arm fracture with a plate. The vertebral fracture later required use of an individually-molded corset. The rib, sternum and pelvis fractures were not displaced so as to require any treatment but rest and analgesic. The principal permanent injuries, fortunately, are only the scar on the upper arm and the cystic tissue on the upper leg and the probability of osteoarthritis from the fractured vertebra. Other damages include future medical expenses for removal of the arm plate and possibly plastic surgery on the arm scar and leg tissue.
We conclude that substantial reparation will be had by an award of $80,000 to plaintiff wife, to include general damages and possible future medical expenses, and $15,663.47 (including court costs in Dr. Merlin's lawsuit for his $850 fees) to plaintiff husband for past medical expenses.

Third-Party Demand
La.R.S. 22:1406 D(4) entitles an uninsured motorist insurance carrier, to the extent of its payment to any person, to the
proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made ....
Niemann v. Travelers Ins. Co., La. 1979, 368 So.2d 1003, 1007, rules:
On the basis alone of statutory interpretation, we find that the UM insurer has no right under R.S. 22:1406 D(4) other than the right to reimbursement from such proceeds, if any, that the uninsured *1106 in fact recovers from the underinsured tort-feasor.
We note that this court, in Pons v. State Farm Mut. A. Ins. Co., La.App. 4 Cir. 1980, 387 So.2d 47, writ granted 393 So.2d 743, had taken the position that Niemann did not prevent a judgment for the UM carrier over against the underinsured tortfeasor if the tortfeasor were sued together with the UM carrier (rather than released as in Niemann). The Supreme Court's grant of writs, however, deprives Pons of authority.
We now decide that Niemann obliges us to hold that the uninsured motorist insurance carrier is not entitled to judgment over against the tortfeasor, not even one joined as a defendant. Niemann allows "no right ... other than the right to reimbursement from such proceeds, it any, that the insured in fact recovers ...." Although Niemann treats an underinsured rather than an uninsured motorist, the "statutory interpretation" is the same and Niemann is controlling.

Decree
Reversed; judgment for Joan Oliver for $80,000 and for Donald Oliver for $15,663.47, each against both Sam Capitano and State Farm Mutual Automobile Insurance Company in solido (but without contribution or indemnity), with interest from judicial demand and all costs.

ON REHEARING
We granted rehearing primarily to reconsider the uninsured motorist insurer's third-party demand against the tortfeasor, in view of Suhor v. Gusse, La. 1980, 388 So.2d 755, 757, n. 5:
Although insurance was available to plaintiff under the uninsured motorist provisions of the State Farm Mutual policies, such insurance was not available to Mr. Bellow and Mrs. Gusse [the defendant tortfeasor and her father, who pleaded poverty] because the uninsured motorist insurer, if cast in judgment, would be entitled to indemnity from them. (Bracketed matter added.)
Our original opinion denied indemnity in indistinguishable circumstances because we overlooked the quoted language, the latest expression from the supreme court.
We now reverse ourselves on the third-party demand and delete our denial of contribution or indemnity, and in lieu thereof grant indemnity and judgment over in favor of State Farm and against Capitano. Our judgment is in other respects reinstated.