489 So.2d 938 (1986)
Margaret MONCRIEF
v.
Joyce B. Panepinto, wife of/and Philip PANEPINTO, and State Farm Automobile Insurance Company.
No. 85-CA-759.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1986.
Roger J. Larue, Jr., Metairie, for plaintiff-appellee Margaret Moncrief.
C. Gordon Johnson, Jr., William G. Argeros, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendants-appellants Joyce & Philip Panepinto.
Deborah I. Schroeder, H. Martin Hunley, Jr., Gerald J. Talbot, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendant-appellee St. Paul Fire & Marine Ins. Co.
Before CHEHARDY, KLIEBERT and WICKER, JJ.
KLIEBERT, Judge.
This is a devolutive appeal by Philip and Joyce Panepinto, defendants-appellants, from a judgment granting a motion for a summary judgment, the effect of which was to permit St. Paul Fire & Marine Insurance Company, an underinsured motorist carrier, to proceed against the Panepintos, the tortfeasors, for amounts paid to the injured victim, notwithstanding the release of the tortfeasor by the victim. We affirm.
Margaret Moncrief, a passenger in a car being driven by James Meyers, which was rear-ended by a car being operated by Joyce Panepinto and owned by her husband, Philip Panepinto, and on which State Farm was the liability insurer, instituted an action in tort for damages against the Panepintos and their insurer. Subsequently, Moncrief amended her petition to include as a defendant St. Paul Fire & Marine Insurance Company, the uninsured motorist carrier on the car in which Moncrief was a passenger. In turn, St. Paul filed a third party petition against the Panepintos.
On December 12, 1984, Moncrief's attorney sent a letter to the attorney representing *939 the Panepintos and State Farm agreeing to settle for the limits of State Farm's policy, i.e., $25,000.00. This same letter stated that he believed the entire case would be settled shortly because at the time they (apparently he and St. Paul's attorney) were only $7,500.00 apart.
On December 19, 1984, apparently pursuant to an oral agreement to settle, St. Paul's attorney delivered to Moncrief's attorney a draft for $42,500.00 and settlement papers, which upon execution would release Meyers and St. Paul from further liability. At that time, no draft had been delivered by State Farm to Moncrief's attorney. On January 7, 1985, Moncrief, for the recited consideration of $25,000.00, executed a document releasing the Panepintos and State Farm from all liability, reserving her right to proceed against all others. On the next day, January 8, 1985, she executed the settlement papers received by her attorney on December 19, 1984, releasing St. Paul and Meyers from all liability arising out of the accident of March 27, 1983.
Subsequently, on January 18, 1985, Moncrief's attorney filed a motion for and obtained a court order dismissing the Panepintos and State Farm from Moncrief's suit with prejudice. Similarly, on January 23, 1985, she filed a motion for and obtained a court order dismissing St. Paul from Moncrief's suit with prejudice. On the same day, St. Paul filed a motion entitled "Motion for Summary Judgment," but in effect, a rule nisi ordering the Panepinto's to show cause why St. Paul should not be permitted to proceed on its third party petition notwithstanding the dismissal of the main demand and the release of the Panepintos by Moncrief.
The trial judge concluded St. Paul was entitled to proceed with its third party claim and ruled accordingly. For the following reasons we believe his ruling was correct and hence affirm the ruling.
The issue presented on the appeal is whether the release of the tortfeasor by Moncrief, the victim, before St. Paul made its payment to the victim, bars the exercise of its claim for reimbursement against the tortfeasor. The answer turns on the interpretation of the provisions of LSA-R.S. 22:1406(D)(4) which provide as follows:
"In the event of payment to any person under the coverage required by this Section[1] and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer." (Footnote added)
Panepintos, appellants, joined by State Farm, contend that the mere fact the injured victim released the tortfeasors and their insurer prior to releasing St. Paul Fire and Marine Insurance Company is dispositive of the legal issues raised by St. Paul's motion for summary judgment. He argues that the uninsured motorist insurer has no right to reimbursement from the underinsured tortfeasor's liability insurance once the insured has negotiated a settlement as to such insurer within the policy limits. Additionally, he argues that no provision of LSA-R.S. 22:1406 grants an uninsured motorist insurer the right to exercise the legal rights and actions of its insured. Rather, he contends the insurer is afforded only certain reimbursement rights and then only by exercising them through the victim from whom they were obtained.
To support his position, he cites Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La.1979); Oliver v. Capitano, 405 So.2d 1102 (4th Cir.1981); Bourgeois v. U.S. Fidelity & Guaranty Co., 385 So.2d 584 (4th Cir.1980); Jilek v. Covert, 465 So.2d 102 (4th Cir.1985), and a line of cases holding that where an insured released a third party *940 tortfeasor the subrogation rights of his insurer are defeated. We have no quarrel with the rulings but, simply put, believe they have no application to the issue involved here.
As pointed out by the appellee, St. Paul is not seeking recovery from the tortfeasor's insurer, nor from the injured victim, but rather, directly from the tortfeasor, and only after the injured victim has been paid for all of her damages. Thus, in our view the answer turns on whether the rights sought to be enforced by St. Paul are those derived by virtue of a subrogation created by an agreement (the insurance policy) between the injured victim and St. Paul, or a right created by operation of law in favor of St. Paul and against the tort-feasor through the victim, or an independent right created by operation of law in favor of St. Paul against the tortfeasor.
If St. Paul's rights are derived merely through a conventional subrogation agreement, the release of the tortfeasor by its insured (Moncrief) would defeat the right of subrogation because at the time the uninsured motorist carrier made payment to the insured, the insured had no rights against his former debtor (the tortfeasor) to subrogate because he had already disposed of them through execution of the release. Pace v. Cage, 419 So.2d 443 (La. 1982). In contrast, if St. Paul's right is derived through the operation of law, it is either a direct right of recovery from the tortfeasor independent of the injured victim's right of recovery or a legal subrogation (as opposed to a conventional subrogation) exercisable through the victim. Where the right is derived by operation of law the release of the tortfeasor by the victim does not necessarily bar St. Paul's right of recovery once it has made payment to the victim.
The Supreme Court, in Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981), at page 408, said:
"The major question of law in this case is whether an insurer that makes payment to its insured under uninsured motorist coverage may enforce a conventional subrogation agreement contained in its policy. We conclude that upon payment an insurer, pursuant to a subrogation agreement contained in its policy, becomes conventionally subrogated to its insured's right against the uninsured tortfeasor.[2] Our general law governing subrogation, Civil Code articles 2159-62,[3] has not been repealed or replaced by the uninsured motorist statute and applies to an uninsured motorist carrier's subrogation to the right of the insured." (Emphasis and Footnote 3 supplied)
Thus, the Bond case involved the enforcement of a conventional subrogation created by the insuring contract or a legal subrogation created by virtue of an in solido obligation and not the exercise of an independent right created by operation of law.
Here St. Paul sought to proceed on its third party petition against the tortfeasor alone and only after the injured victim had been fully compensated for her injuries. Additionally, the rights it seeks to exercise are those granted by LSA-R.S. 22:1406(D)(4) and/or its subrogation rights obtained by operation of law under the provisions of the Civil Code, i.e., old Civil Code article 2161(3) or new Civil Code articles 1829(3) and 1804, by virtue of its in solido obligation with the tortfeasor and not solely the conventional subrogation rights it may have been entitled to under the terms of its policies.
As we interpret the rights granted by LSA-R.S. 22:1406(D)(4) St. Paul has a direct *941 right of recovery against the tortfeasor independent of the rights of the injured victim against the tortfeasor. See footnote 7 at page 164, Fertitta v. Allstate, 462 So.2d 159 (La.1985) and Judge Blanche's dissenting opinion at page 444 in Pace v. Cage, supra.
Moreover, no inequities result from such a construction because the injured victim is entitled to recover by preference over the insurance carrier until full compensation is received. (See footnote (2) in quotation from Bond case, supra.) Additionally, it puts the burden of the tort on the tortfeasor where, under our general tort law, it is imposed.
Thus, the release of the tortfeasor by the injured victim served only to release the preferential claim of the injured victim against the tortfeasor and her insurer and had no effect on the rights of St. Paul to seek recovery from the tortfeasor for payments made to the injured victim on its behalf.
Since the obligation of the tortfeasor and of St. Paul is in solido,[4] under either the new or the old Civil Code, subrogation took place by operation of law in favor of St. Paul and against the tortfeasor immediately upon making its payment to the tortfeasor because it was mandatorily required to provide the uninsured and underinsured coverage under the provisions of LSA-R.S. 22:1406(D)(1)(a), hence, St. Paul also has a legal subrogation against the tortfeasor. However, since we interpret the right of reimbursement granted by the insurance code [LSA-R.S. 1406(D)(4)] to be a direct right independent of the victim's right and, *942 therefore, not affected by a release of the tortfeasor by the victim, we need not consider the effect of the release where St. Paul had merely a legal subrogation under the Civil Code.
Accordingly, the judgment of the trial court is affirmed. All costs are to be borne by the appellant.
AFFIRMED.
NOTES
[1] LSA-R.S. 22:1406(D)(1)(a) mandatorily requires an insurance carrier doing business in Louisiana to provide uninsured and underinsured coverage to a motorist acquiring liability coverage from the carrier, unless the motorist specifically rejects the coverage.
[2] Subrogation cannot injure the insured; however, if he has been paid but in part for his damages, he may exercise his right for what remains due in preference to his insurer. La. C.C. art. 2162; Southern Farm Bureau Casualty Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981).
[3] These were the articles applicable prior to the enactment of Act 331 of 1984 which became effective on January 1, 1985. Since then, new Civil Code articles 1825 thru 1830 have replaced the old Civil Code articles referred to here.
[4] Under old Civil Code article 2093, for an obligation to be in solido an express declaration of solidarity was required. However, in Pringle Associated Mortgage Co. v. Eanes, 254 La. 705, 226 So.2d 502 (1969) the Supreme Court said, at page 508:

"... Article 2093 [old Civil Code number] provides in essence that, although obligations in solido must be expressly stipulated, This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law.' ..."
and in Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982) the Supreme Court said, at page 576:
"An obligation is solidary among debtors when they are obliged to the same thing, so that each may be compelled for the whole, and when payment by one exonerates the other towards the creditor. When these characteristics result from provisions of law, as in the case of the tortfeasor and uninsured motorist carrier, an obligation in solido exists without requiring an express declaration."
(Emphasis Supplied)
and at page 578 said:
"This requisite of solidarity is satisfied in the case of the uninsured motorist and the tortfeasor because neither may plead the benefit of division, as if each were alone. To permit the tortfeasor or uninsured motorist carrier to plead the benefit of division would be inimical to the legislative aim of the uninsured motorist statute. The object of that legislation is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. Bond v. Commercial Union Assurance Co., 407 So.2d 401, 407 (La. 1981) (on rehearing); Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580, 28 A.L.R.3d 573 (1968).
The statute is to be liberally construed to carry out this objective of providing reparation for those injured through no fault of their own. Niemann v. Travelers Insurance Co., 368 So.2d 1003 (La.1979); Elledge v. Warren, 263 So.2d 912 (La.App. 3rd Cir.1972); Valdez v. Fed. Mut. Ins. Co., 272 Cal.App.2d 223, 77 Ca.Rptr. 411 (1969). The legislation cannot be construed, therefore, to benefit the insurer and the tortfeasor by requiring the accident victim to divide his action between them."
Also, at page 580, it further stated:
"The solidary obligation in the present case results primarily from provisions of law, viz., the general rules of delictual responsibility, La.C.C. arts. 2315, et seq., and the uninsured motorist statute, La.R.S. 22:1406(D). Although an insurer must deliver or issue for delivery automobile liability insurance in order to be bound, the basic ingredients of the obligation are provided and required by law. Under these circumstances, the obligation is solidary by operation of law, without requiring an express declaration."
Thus, through the legal concept of in solido liability the Supreme Court, in essence, has equated the statutorily created reimbursement rights of the uninsured or underinsured motorist insurance carrier to reimbursement from the tortfeasor to contribution between co-tortfeasors, except that the victim must be totally satisfied before the insurance carrier can exercise the contribution rights.